Robert CARPENTER, Petitioner,

v.

UNITED STATES of America, et al., Respondents.

No. CV 91–0036.

United States District Court, E.D. New York.

Aug. 4, 1995.

Robert Carpenter, Southampton, NY, petitioner pro se.

Zachary Carter, U.S. Atty., Garden City, NY by Douglas T. Burns, Asst. U.S. Atty., for respondents.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

### I. BACKGROUND

In March 1990, petitioner *pro se* Robert Carpenter ("Carpenter") and a co-defendant were tried on a three-count indictment for bank fraud in violation of 18 U.S.C. § 1344. During trial, Carpenter pleaded guilty to the second count; the first and third were dismissed. Carpenter was sentenced, on May 22, 1990, to 30 months incarceration.

On March 6, 1991, Carpenter collaterally attacked his sentence, by motion pursuant to 28 U.S.C. § 2255 (the "§ 2255 motion"), on grounds: that the determination of his sentence was based on assumptions; that the government violated its plea agreement with Carpenter; that the Court should have ordered a severance at trial; and that there were errors in his presentence report.

On June 9, 1992, Carpenter amended the § 2255 motion to include further grounds for collateral relief.

On May 10, 1993, Carpenter moved the Court for an order granting leave to amend the § 2255 motion a second time. By order dated March 7, 1994, the Court granted the motion.

On May 3, 1994, Carpenter submitted to the Court a "28 USC 2255 Motion recast into Writ of Coram Nobis and 42 USC 1983 action." (the "present motion"). His brief explains: "[i]t must be noted that Carpenter's full sentence ended in January 1993 and realizing that any more action on his 2255 motion has become moot, Carpenter ... has now recast his 2255 motion into a writ coram nobis and a 42 USC 1983 action."

Carpenter raises nine grounds in the present motion upon which he claims relief should be granted. The grounds and relief sought are as follows:

(1) Carpenter claims that his Sixth and Fourteenth Amendment rights have been violated because the Court has failed to respond to his motions. He asks the Court to set aside the judgment against him, vacate his sentence, and dismiss the indictment.

(2) Carpenter claims that he was unable to contest the statements contained in his presentence report either before or after sentencing in violation of his due process rights. He asks the Court to set aside the judgment, and vacate his sentence.

(3) Carpenter claims that the government violated his plea agreement on the ground that, even though the government promised that it would take no position as to his sentencing, it influenced the probation report and opposed Carpenter's motion to reduce the sentence, pursuant to Fed.R.Crim.P. 35, after it was imposed. He asks the Court to set aside the plea agreement and vacate his sentence.

(4) Carpenter claims that he did not voluntarily and intelligently enter into his plea agreement because: (a) his attorney mistak-

enly advised him to enter into it; (b) his attorney pressured him to enter into it; and (c) he did not have a proper understanding of the relationship between the law and the facts when he entered into it. He asks the Court to set aside the plea agreement and vacate his sentence.

(5) Carpenter claims that he received ineffective assistance of counsel. He asks the Court to set aside his conviction and vacate his sentence.

(6) Carpenter claims that it would have been impossible for him to receive a fair trial because the Court did not order that the claims against Carpenter be severed from those against his co-defendant at trial. He asks the Court to set aside his conviction and vacate his sentence.

(7) Carpenter claims that a private bank, a law firm, and an individual conspired with the United States government to bring criminal charges against him. He charges selective prosecution and prosecutorial misconduct and seeks $1 million in compensatory damages and $50 million in punitive damages.

(8) Carpenter claims that the actions of a private bank violated his civil rights under New York State law. He seeks from the bank $3 million in compensatory damages and $15 million in punitive damages.

(9) Carpenter claims that the United States Internal Revenue Service has violated his federal constitutional rights by assessing civil tax penalties against him.

On June 7, 1995, the Court heard oral argument on the present motion.

## II.  DISCUSSION

■ Where a petitioner is in custody when he files his petition for habeas review, a federal court may pass on the merits of the petition even though the petitioner is unconditionally released before the petition is acted upon, provided the petitioner still suffers collateral consequences from his conviction. *Carafas v. LaVallee*, 391 U.S. 234, 237, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968). The petition will be considered moot "only if it is shown that there is no possibility that any collateral legal consequences will be imposed

on the basis of the challenged conviction." *Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899–1900, 20 L.Ed.2d 917 (1968). In the instant case, despite Carpenter's acknowledgement, his petition for habeas relief is not barred by the mootness doctrine. The claims in the present motion fall into two categories: (1) those that collaterally attack the conviction and sentence; and (2) those that seek non-habeas relief.

### A.  *The Habeas Claims*

Carpenter's first six claims attack his conviction and sentence, and are brought pursuant to § 2255. None of the issues presented to the Court in the first six claims have been raised on appeal. The United States Court of Appeals for the Second Circuit has held that, in the context of a § 2255 petition, "failure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause [for not raising the issue on appeal] and prejudice [resulting therefrom]." *Campino v. United States*, 968 F.2d 187, 190 (1992).

### 1.  *Delay By the Court in Deciding the Petition*

■ Carpenter's first claim can be easily disposed. Carpenter filed the § 2255 motion in March 1991. He amended that petition in June 1992. He moved the Court, in May 1993, for leave to appeal a second time. Leave was granted, and Carpenter submitted the present motion in May 1994. Although there has been delay in this action, the delay has been in large part caused by Carpenter. Delay attributable to the Court may have inconvenienced Carpenter, but it did not violate his due process rights.

### 2.  *The Presentence Report*

Carpenter's second claim alleges that there were errors in his presentence, and that Carpenter was unable to challenge these errors either before or after sentencing. As an initial matter, the record indicates that Carpenter was given ample time to review the presentence report prior to sentencing and his attorney interposed ten objections. Be-

cause Carpenter did not contest the presentence report's accuracy on appeal, he cannot point to errors in the presentence report as grounds for collateral attack on his sentence unless he shows "cause" for his failure to appeal and "actual prejudice" resulting therefrom.

■■■■ As to "cause," Carpenter asserts that his failure to appeal regarding the contents of his presentence report was occasioned by the bad advice of counsel. *See* Transcript of Oral Argument on the Present Motion, at 6. Where the procedural default results because of an attorney's alleged error, the error will not constitute "cause" unless the error amounts to ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). In order to show ineffective assistance of counsel, the movant must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's error, the result in the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984); *see also United States v. Nino,* 878 F.2d 101, 103–04 (3d Cir.1989) (holding that the *Strickland* standard applies to § 2255 motions). Essentially, Carpenter must show that there is a reasonable probability that his sentence would have been reduced had he appealed.

Carpenter argues that the presentence report contained three errors: (1) inaccuracies regarding gambling and drinking; (2) misrepresentations regarding his role in the crime; (3) and miscalculation of a proper sentencing range. The presentence report recommended a sentence of between 40 and 52 months. Upon review, the Court is convinced that this is a proper range for a defendant, with no prior criminal history, who pleaded guilty to a count charging him with scheming to cause federally insured banks to loan in excess of $3 million. Nonetheless, the Court sentenced Carpenter to 30 months incarceration. Finding no error in the core calculations, the Court determines that even if there were merit to Carpenter's

argument regarding certain representations in the presentence report, there is no reasonable probability that he would have received a sentence of less than 30 months had he appealed. As such, Carpenter cannot show cause as to why he did not appeal. For the same reasons, he cannot show actual prejudice.

Carpenter also claims that the sentencing Court considered information that was not available for Carpenter's review in determining the length of his sentence. Nothing in the record supports this claim, and the Court finds it to be completely devoid of merit.

3. *Breach of the Plea Agreement*

Carpenter's third claim charges the government with breach of the plea agreement. He claims that in the plea agreement the government promised that it would take no position as to the severity of his sentence, and that the government breached that promise "by their version of the events which led Probation to recommend incarceration" and by "recommending that the sentence imposed be upheld" in opposition to Carpenter's motion to reduce his sentence, pursuant to Fed.R.Crim.P. 35. Because this issue was not raised on appeal, Carpenter is procedurally barred from raising it collaterally unless he shows "cause" and "actual prejudice." Carpenter has offered no explanation as to why he did not raise this issue on appeal. Even if Carpenter could establish "cause," however, he cannot establish "actual prejudice."

■■■■ Where a defendant has been induced to enter a guilty plea in any significant degree by a promise by the government to, for example, refrain from making recommendations as to his sentence, "such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *see United States v. Knights,* 968 F.2d 1483, 1486 (2d Cir.1992). The record in the instant case indicates that as a condition to Carpenter's plea the government promised not to take a position as to what Carpenter's sentence should be. There is no indication, however, that the government did anything but live up to its promise. Carpenter's accusations that prosecutors in-

fluenced the United States Probation Department in its preparation of the presentence report are vague and conclusory. At sentencing, the record clearly shows that the government took no position as to what Carpenter's sentence should be. The government opposed Carpenter's post-sentencing motion, pursuant to Fed.R.Crim.P. 35, but, by doing so, it did not breach the plea agreement—*i.e.,* the opposition urged that the sentence imposed be upheld and did not constitute the taking of a position as to what the sentence should be.

### 4. *Voluntariness of the Guilty Plea*

Carpenter's fourth claim alleges that his guilty plea was not voluntarily and intelligently made. Carpenter has not raised this issue on appeal and is therefore barred from raising it on collateral attack unless he shows "cause" and "actual prejudice." Carpenter has made no showing as to "cause." Even if "cause" for his failure to appeal could be established, Carpenter has not demonstrated that "actual prejudice."

■ A guilty plea is invalid, and subject to collateral habeas attack, where it is involuntary or where it does not represent an intelligent choice among alternative courses available to the defendant. *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). It is "constitutional error for a trial judge to accept a defendant's guilty plea 'without an affirmative showing that it was intelligent and voluntary.'" *Oppel v. Meachum,* 851 F.2d 34, 37 (2d Cir. 1988) (quoting *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969)). However, where a guilty plea is entered by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, [it] must stand unless induced by threats ... [or] misrepresentation." *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970); *see also United States ex rel. Hogan v. Bara,* 578 F.Supp. 1075, 1079 (E.D.N.Y.1984). "[A] defendant's mistaken subjective impressions gained from conferences with his legal counsel, in the absence of substantial objective proof show-

ing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea." *United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1098 (2d Cir.1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973).

■ Carpenter argues that he entered into the plea agreement, even though he did not understand the law as it applied to the facts of his case, because his attorney mistakenly advised and pressured him to do so. Carpenter has not identified what mistaken impression of the law he had much less come forward with "substantial objective proof" showing that the mistaken impression was reasonably justified. There being no indication in the record that Carpenter's plea was anything less than voluntary and intelligent, Carpenter was not prejudiced by his failure to raise this argument on appeal.

### 5. *Ineffective Assistance of Counsel/Conflict of Interest*

■ In his fifth claim, Carpenter alleges the following: that prior to trial his attorney applied for employment with the United States Attorney; that, because his attorney was anxious to undertake employment with the United States Attorney, he exerted pressure on Carpenter to enter a guilty plea prior to trial and during trial; that the prospect of employment "hindered [his attorney's] performance at trial" to the extent that Carpenter's representation was constitutionally ineffective; and that Carpenter's attorney did in fact undertake employment with the United States Attorney soon after Carpenter entered his guilty plea. This claim is not procedurally barred, even though it was not raised on appeal. *See Ciak v. United States,* 59 F.3d 296, 303–04 (2d. Cir.1995).

■ The right to counsel under the Sixth Amendment entails "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). Where a district court has been "sufficiently appraised

of even the possibility of a conflict of interest.... [it] must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2d. Cir.1994) (citations omitted). Where the district court finds that "the attorney suffers from a severe conflict—such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation—the court is obligated to disqualify the attorney." *Id.* (citation omitted). Where the district court finds a conflict of lesser severity, the court must obtain from the defendant "a valid waiver of his right to a non-conflicted lawyer" before allowing the representation to continue. *Id.* (citation omitted). A valid waiver may be obtained by following the procedures set forth in *United States v. Curcio*, 680 F.2d 881, 888–890 (2d. Cir.1982). *Id.*

The record in the instant case indicates that the Court was appraised prior to trial of the employment application made by Carpenter's counsel. At that time, the Court determined that there was a potential conflict of interest, but not one that was so severe as to require immediate disqualification. As such, on March 3, 1990, before the scheduled jury selection, the Court held a hearing to determine whether the representation could continue. The following colloquy took place:

CARPENTER'S ATTORNEY: I currently have an application pending for an appointment as an Assistant United States Attorney for the Eastern District. I have informed my client, Mr. Carpenter, of this, and asked him if he has any objections [to me] representing him at the trial. He indicates that he does not and [wants] to proceed with me as his counsel. Is that correct, Mr. Carpenter?

CARPENTER: That's true.

THE COURT: Any objection?

ASSISTANT U.S. ATTORNEY: None, Your Honor. We are aware of the application and it will have no effect at all on the handling of this case.

THE COURT: Mr. Carpenter, I'm sure counsel has explained to you what is going on, but do you understand what he said? He said he has an application to be appointed by the U.S. Attorney for a position with the U.S. Attorney, and you may feel that maybe he wouldn't want to do anything to rock the boat?

CARPENTER: Well, the way he has explained it, it's an inactive application at this time and it may come up again. It may, from what I understand, but at this time I have no objection.

THE COURT: When did he discuss it with you? Have you had enough time to think about it?

CARPENTER: Yes. It's been a week or so.

THE COURT: Have you discussed it with someone else, so you can have a free exchange of thoughts concerning it, so you know what you're doing?

CARPENTER: Yes.

THE COURT: And you are satisfied?

CARPENTER: Satisfied.

■■■ The transcript of the hearing indicates that Carpenter was informed of the potential conflict of interest and was fully aware of the dangers associated therewith. Carpenter then chose to proceed with his attorney despite the potential conflict of interest. At the time he decided to continue, the record shows that Carpenter had the capacity to make a rational decision. There is no indication anywhere in the record that Carpenter's waiver of his right to a non-conflicted attorney was anything less than voluntary and intelligent. Having waived that right, Carpenter cannot now raise it as a basis for collateral attack on his conviction and sentence.

### 6. *Denial of Carpenter's Motion to Sever*

■■■ Carpenter claims that it would have been impossible for him to receive a fair trial because the Court did not order that the claims against Carpenter be severed from those against his co-defendant at trial. In essence, this is a claim that his guilty plea did not represent a voluntary choice between two alternatives. Carpenter claims that, in retrospect, he was left with unenviable choice between pleading guilty and proceeding with an unfair trial. When Carpenter entered his

guilty plea, however, he did not preserve the right to appeal the severance ruling. At the plea allocution, the Court inquired:

> If you plead guilty and if I accept your plea, you will be giving up your constitutional right to trial and the other rights I've discussed. There will be no further trial of any kind, no right to appeal.... Do you understand?

Carpenter answered in the affirmative, and by doing so waived the right upon which his claim for collateral relief is based.

### B. *The Non–Habeas Claims*

Carpenter does not attack his conviction or sentence in what the Court interprets to be his seventh, eighth, and ninth claims. As such, these claims are improperly before the Court in this action. Although release from custody does not moot Carpenter's habeas petition, release from custody does not entitle Carpenter to tack onto his habeas petition non-habeas causes of action. These non-habeas claims must be dismissed without prejudice to Carpenter's right to bring them in a new civil complaint.

### III. *CONCLUSION*

For the above reasons, the petition is dismissed without prejudice to Carpenter's right to file a new civil complaint containing any and all non-habeas claims raised in the present motion.

SO ORDERED.